UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GUIDEONE MUTUAL INSURANCE CO., <br><br> Plaintiff/Counter-Defendant, <br><br> v. <br><br> GOOD SHEPHERD LUTHERAN CHURCH, <br><br> Defendant/Counter-Plaintiff. | No. 20 CV 4730 <br><br> Judge Manish S. Shah |

MEMORANDUM OPINION AND ORDER

GuideOne Mutual Insurance Company filed this lawsuit against Good Shepherd Lutheran Church, a policyholder, seeking a declaratory judgment that GuideOne had done all that it had promised under their contract. Good Shepherd disagrees. The church brings counterclaims for statutory and common law fraud, breach of contract, breach of fiduciary duty, and for attorney fees pursuant to the Illinois Insurance Code. GuideOne moves to dismiss five of Good Shepherd's six counterclaims under Rule 12(b)(6). For the reasons discussed below, GuideOne's motion is granted in part and denied in part.

I.  **Legal Standards**

To survive a motion to dismiss under Rule 12(b)(6), a complaint (or in this case an answer asserting counterclaims) must state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). The complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 570 (2007)). In reviewing a motion to dismiss, a court must construe all factual allegations as true and draw all reasonable inferences in the claimant's favor. *Sloan v. Am. Brain Tumor Ass'n*, 901 F.3d 891, 893 (7th Cir. 2018).

## II. Background

After a fire broke out at Good Shepherd, the church filed a claim with its long-time insurer, GuideOne. [37] at 27–28.[1] GuideOne's adjuster said that the replacement cost would be "determined by the actual amount incurred and paid for the fire restoration project." *Id.* at 29. When GuideOne issued an initial check to the church based on non-union labor rates, Good Shepherd's pastor sought assurances that by accepting those funds the church would not be "locked in and limited" by a preliminary estimate of its loss. *See id.* at 29–30, 36–38. GuideOne's adjuster said that Good Shepherd would "eventually receive the amount that [Good Shepherd] actually spends to repair and restore" its building. *Id.* at 30. On the basis of these statements, the church cashed the check. *See id.* at 30, 52–53. When it came time to select a contractor, GuideOne's adjuster said that the church was free to make its own choice. *Id.* at 30. Later, when the church sought to recover its actual costs based on union labor rates, GuideOne refused to pay. *Id.* at 33–40.

Good Shepherd claims that GuideOne's adjuster misrepresented the policy in order to lure the church into settling its claim for less than it was entitled to receive. *Id.* at 48, 52. GuideOne's representative knew that his statements were false and

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of the filings. The facts are taken from church's answer to the second amended complaint. [37].

deceived the church into thinking that its choice of contractor would not affect the claim. *Id.* Furthermore, GuideOne failed to communicate its own obligations under the policy and misrepresented a requirement that the insured accept cost estimates. *Id.* at 49. Relying on GuideOne's representations, the church made important decisions about how to pursue its claim, how to negotiate with a contractor, and which contractor to hire. *See id.* at 48–49, 52–53.

The church also alleges that GuideOne's handling of its claim was unfair and adversarial. *Id.* at 46–47. The relationship deteriorated after Good Shepherd chose a general contractor that used union labor. *Id.* at 31–33. When Good Shepherd sought to update GuideOne about its plans, GuideOne's adjuster claimed that the insurer, rather than the church, had the right to choose the contractor for the repair. *Id.* at 32. GuideOne refused to pay for or investigate revised fire restoration costs that included union labor. *Id.* at 33, 44, 47. When Good Shepherd's adjuster sent a revised estimate reflecting the rates of the church's chosen contractor, GuideOne's representative replied that the insurance claim had been resolved and advised the church to file for appraisal pursuant to the policy. *Id.* at 33–34. Repeated appeals from the church and an appraisal filing failed to move GuideOne. *Id.* at 35–40. Even when the two arrived in court, GuideOne continued to throw up roadblocks: the two parties agreed to participate in a settlement conference before a federal magistrate judge but GuideOne withdrew because it could not or would not participate unless the contractors participated in the conference. *Id.* at 40–41.

3

Good Shepherd brings six counterclaims for (1) breach of contract; (2) attorney fees pursuant to Section 155 of the Illinois Insurance Code; (3–4) violations of the Illinois Consumer Fraud and Deceptive Business Practices Act; (5) breach of fiduciary duty; and (6) common law fraud. [37]. GuideOne moves to dismiss all of the counterclaims except for breach of contract. [39].

### III. Analysis

#### A. Section 155

Section 155 of the Illinois Insurance Code allows an insured to recover attorney fees when an insurer, either by litigating its liability or loss or by delaying the settlement of a claim, acts in a "vexatious and unreasonable" way. 215 ILCS 5/155(1). The statute "provides an extracontractual remedy" and "presupposes an action on the policy." *Cramer v. Ins. Exch. Agency*, 174 Ill.2d 513, 523 (1996). Under Section 155, a party can recover reasonable attorney fees, other costs, and an additional penalty set by statute. 215 ILCS 5/155(1). Because Section 155 offers a statutory remedy for insurer misconduct, Illinois does not recognize a separate "new tort" of bad faith. *Cramer*, 174 Ill.2d at 526–27.

GuideOne does not challenge the substance of Good Shepherd's Section 155 counterclaim. [39] at 5–7. Instead, the insurance company argues that the church has pled a bad faith tort claim preempted by the Illinois Insurance Code, and alternatively that Good Shepherd is seeking remedies that go beyond those provided for in the statute. *Id.*; [46] at 2–3. Good Shepherd contends that its claim is statutory

4

and does not sound in tort. [41] at 5–6. The church also argues that it has adequately pled facts to support its Section 155 claim. *Id.* at 7–8.

Good Shepherd is right: its counterclaim is for the extracontractual remedies under the statute, not damages from a bad faith tort. [37] at 44–46; *see Creation Supply, Inc. v. Selective Ins. Co. of the Se.*, 995 F.3d 576, 578 (7th Cir. 2021) ("Section 155 permits an insured to seek extracontractual damages from an insurer in any case in which at least one of three issues remains undecided: (1) the insurer's liability under the policy, (2) the amount of the loss payable under the policy, or (3) whether there was unreasonable delay in settling a claim."). Although breach of contract and Section 155 can provide the only remedies for a straightforward failure-to-pay case, *see Sieron v. Hanover Fire and Cas. Ins. Co.*, 485 F.Supp.2d 954, 961 (S.D. Ill. 2007), the church does not stray from that limitation here. Good Shepherd alleges delay and misconduct by GuideOne in the denial of a portion of its fire loss claim, and that claim is for the extracontractual remedies under Section 155. [37] at 44–46; *see Sloan v. Am. Brain Tumor Ass'n*, 901 F.3d 891, 893 (7th Cir. 2018). GuideOne admits as much by acknowledging that Good Shepherd "makes an allegation of unreasonable and vexatious conduct." [39] at 6. That Good Shepherd used the words "bad faith" in its pleading, [37] at 45, does not transform its counterclaim into one for tort liability.

GuideOne is right that Good Shepherd has requested remedies outside those authorized by Illinois law. [37] at 44–46. Under Count II the church seeks breach of contract damages, attorney fees, punitive damages, and "any other assessment of damages" available under Section 155. *Id.* at 46. Breach of contract and punitive

5

damages are outside the statutorily authorized remedies. 215 ILCS 5/155(1). The church is not required to conform its pleading to the statute, however, because if final judgment is entered for Good Shepherd, this court will "grant the relief to which each party is entitled" whether or not it is spelled out in the pleadings. Fed. R. Civ. P. 54(c). That the church overstepped in its request is of no consequence at this stage of the case.

The motion to dismiss the Section 155 claim is denied.

### B.     Breach of Fiduciary Duty

In order to state a claim for breach of fiduciary duty, a plaintiff must show that "(1) a fiduciary duty exists; (2) the fiduciary duty was breached; and (3) the breach proximately caused the injury to which the plaintiff complains." *Ball v. Kotter*, 723 F.3d 813, 826 (7th Cir. 2013) (citing *Neade v. Portes*, 193 Ill.2d 433, 444 (2000)). In general, no fiduciary relationship exists between an insurer and insured in Illinois. *Crichton v. Golden Rule Ins. Co.*, 576 F.3d 392, 397–98 (7th Cir. 2009); *Greenberger v. GEICO Gen. Ins. Co.*, 631 F.3d 392, 401 (7th Cir. 2011). "The plaintiff has the burden to plead with specificity and prove by clear and convincing evidence the existence of a fiduciary or special relationship." *Greenberger*, 631 F.3d at 401 (citing *Martin v. State Farm Mut. Auto Ins. Co.,* 348 Ill.App.3d 846 (1st Dist. 2004)); *see Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 572 (7th Cir. 2012).

Good Shepherd argues that the particular nature of GuideOne's misconduct distinguishes this case, and that a fiduciary relationship existed because GuideOne filed a subrogation action and canceled a settlement conference with Good Shepherd.

6

[41] at 11–12. But insurer misconduct does not speak to the existence of a fiduciary relationship, which depends instead on the special trust, confidence, and influence between two parties. *See Greenberger*, 631 F.3d at 401; *Connick v. Suzuki Motor Co.*, 174 Ill.2d 482, 500 (1996); *Martin*, 348 Ill.App.3d at 850. Here, no relationship of special trust has been pled and GuideOne's alleged misconduct does not speak to the existence of fiduciary duties.

Amendment of Good Shepherd's claim for breach of fiduciary duty would be futile. Good Shepherd's claim depends entirely on the flawed legal theory that a fiduciary duty between an insurer and insured can arise from misconduct. [37] at 50–51; [41] at 11–12. No additional facts or arguments will cure this legal defect. Counterclaim V is dismissed with prejudice. *See McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 685 (7th Cir. 2014) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)) ("While the federal courts 'should freely give leave [to amend a pleading] when justice so requires,' Rule 15(a)(2), a district court may deny leave for a variety of reasons, including undue delay and futility.") (alteration in original).

**C.    Fraud**

Counts III and IV both allege claims of consumer fraud and unfair practices under the Illinois Consumer Fraud Act. Count VI is a claim for common law fraud.

The Consumer Fraud Act prohibits "unfair or deceptive acts or practices ... in the conduct of any trade or commerce." 815 ILCS 505/2. Deceptive or unfair practices include any "misrepresentation or the concealment, suppression or omission of any material fact." *Id*. To state a claim under the Act, a plaintiff must show "that the

7

defendant committed a deceptive or unfair act with the intent that others rely on the deception, that the act occurred in the course of trade or commerce, and that it caused actual damages." *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 736 (7th Cir. 2019) (citing *Siegel v. Shell Oil Co.*, 612 F.3d 932, 934–35 (7th Cir. 2010)).

The elements of common law fraud are "(1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement." *Connick v. Suzuki Motor Co.*, 174 Ill.2d 482, 496 (1996); *see Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 569 (7th Cir. 2012). Under either the Consumer Fraud Act or a common law theory, a plaintiff alleging fraud must meet the heightened pleading standards of Rule 9(b). *Greenberger v. GEICO Gen. Ins. Co.*, 631 F.3d 392, 399 (7th Cir. 2011).

In a contractual setting, a plaintiff pleading fraud must show more than "the mere fact that a defendant promised something and then failed to do it." *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill.2d 100, 169 (2005) (quoting *Zankle v. Queen Anne Landscaping*, 311 Ill.App.3d 308, 312 (2nd Dist. 2000)); *Greenberger*, 631 F.3d at 399. In other words, "a breach of contractual promise, without more, is not actionable" either under the Consumer Fraud Act, *Avery*, 216 Ill.2d at 169, or under a theory of common law fraud. *See Greenberger*, 631 F.3d at 401. The plaintiff must prove that the defendant engaged in fraudulent acts or practices distinct from any underlying breach of contract. *Id.* at 399 (citing *Avery*, 296 Ill.2d 100).

GuideOne argues that *Avery* bars the church's fraud claims because Good Shepherd is essentially alleging that the insurance company has not paid what it owes under their contract. [39] at 8. Good Shepherd points out that "[a]n insurer's conduct may give rise to both a breach of contract and a separate and independent tort action." [41] at 8 (quoting *Cramer v. Ins. Exch. Agency*, 174 Ill.2d 513, 528 (1996)). The church also argues that Section 155 of the Illinois Insurance Code does not preempt its fraud claims. *Id*. at 8–9.

Good Shepherd is correct that an insurer's conduct can be the basis for both claims of fraud and breach of contract. *See, e.g.*, *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547 (7th Cir. 2012) (mortgagor stated claims for breach of contract and violation of Consumer Fraud Act). But to be actionable, fraud claims in a contractual setting must go beyond a "garden-variety breach of contract." *Greenberger*, 631 F.3d at 399 (citing *Avery*, 296 Ill.2d 100). In this case, Good Shepherd's claims fail not because of preemption or a lack of particularity under Rule 9(b) but because the church has not alleged fraud separate from the alleged breach of contract.

Good Shepherd claims that GuideOne committed fraud because it refused "to fully honor [Good Shepherd's] fire loss claim," took "an adversarial position to its insured," failed to consider or investigate updated cost requests, failed to properly communicate about its position on costs and its obligations under the policy, and made misrepresentations and omissions in handling the claim. [37] at 46–50, 52–53. The church alleges that GuideOne's adjuster knowingly misrepresented the meaning of the policy in order to entice the church to settle its fire loss claim for less than it

9

was entitled to recover. *Id*. at 48. Finally, Good Shepherd alleges that GuideOne's adjuster misled the church into "thinking that its choice of a contractor would not adversely affect its ability to settle its fire loss claim." *Id*.

That GuideOne refused to handle Good Shepherd's claim a certain way, did not communicate as it should have, failed to consider certain costs, or took adversarial actions are all allegations that the insurer failed to fulfill its contractual promises. Just as it does in its claim for breach of contract, [37] at 41–44, Good Shepherd is alleging that GuideOne owed various duties that the insurer failed to perform. *Id*. at 48–49. Those allegations cannot constitute fraud because "a 'deceptive act or practice' involves more than the mere fact that a defendant promised something and then failed to do it." *See Avery*, 216 Ill.2d at 169 (quoting *Zankle*, 311 Ill.App.3d at 312). That GuideOne's adjuster misrepresented the meaning and effect of the policy and the choice of contractor presents a closer question, but also does not rise to the level of fraud. The representations at issue were about the meaning and effect of the policy: whether the contract bound Good Shepherd to an initial estimate and whether Good Shepherd's choice of contractor would affect its claim. [37] at 48. The determination of the statements' truth or falsity depends on the scope of the underlying policy, and they were made as part of a contractual relationship. In order to show fraud, Good Shepherd needed to allege fraudulent acts that were distinct from those alleged in its breach of contract claim. *See Greenberger*, 631 F.3d at 399 (dismissing fraud claims where a plaintiff's fraud and contract claims "rest on the same factual foundation"). It has not done so here. Instead, Good Shepherd's fraud and contract claims rely on

10

identical facts about the policy and GuideOne's conduct. *Compare* [37] at 41–44, *with id.* at 48–50, 52–53. The church's fraud claims are premised on the language of the policy, duplicate Good Shepherd's breach of contract claim, and cannot form the basis for a fraud action.[2]

Good Shepherd originally brought its fraud counterclaims in response to GuideOne's first complaint. [8]. GuideOne moved to dismiss the fraud counterclaims and raised the argument that fraud allegations centered on a mere breach of contract did not state a claim. [10] at 5–6. When GuideOne twice amended its complaint, [18]; [36], the church was on notice of the issue and had an opportunity to show how its fraud claims were not barred by *Avery*/*Greenberger*. Its counterclaims to GuideOne's second amended complaint, [37], have not solved the problem and there is no reason to believe an amendment will succeed in doing so. That the church has twice failed to show how its fraud claims are distinct from the underlying breach of contract, has not sought leave to amend, and has not described how it would address this deficiency if given the chance indicate that amendment would be futile. *See Webb v. Frawley*, 906 F.3d 569, 582–83 (7th Cir. 2018); *James Cape & Sons Co. v. PCC Constr. Co.*, 453 F.3d 396, 400–401 (7th Cir. 2006) (affirming a district court's dismissal with prejudice where a plaintiff failed to properly request leave to amend and "[t]he district court could have quite reasonably believed that an amended complaint would suffer the same fatal flaws as the one before it.").

---

[2] Good Shepherd also alleges that GuideOne committed fraud by improperly litigating the claim. [37] at 49. But that allegation too turns on a dispute about coverage under the policy and is therefore barred by *Avery*/*Greenberger*.

11

The Consumer Fraud Act and common law fraud counterclaims are dismissed with prejudice.

**IV. Conclusion**

GuideOne's motion to dismiss, [39], is granted in part and denied in part. Good Shepherd's counterclaim for remedies under Section 155 of the Illinois Insurance Code is not dismissed. The counterclaims for breach of fiduciary duty, consumer fraud, and common law fraud are dismissed with prejudice. GuideOne shall file an answer to counterclaims I and II and the parties shall file a status report on August 4, 2021, with a proposal for a case schedule.

ENTER:

                                              Manish S. Shah
                                              United States District Judge

Date: July 21, 2021